JUDGE ENGELMAYER

## 12 CV 5297

JED R. SCHLACTER, ESQ.
**SCHLACTER & ASSOCIATES**
**Attorneys for Plaintiff**
**450 Seventh Avenue, Suite 1308**
**New York, NY 10123**
**212 695-2000**



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

**EVERLAST WORLD'S BOXING HEADQUARTERS**
**CORPORATION,**

                                        **Plaintiff,**

            -against-

**RINGSIDE, INC., COMBAT BRANDS, LLC and**
**RAL, LLC,**

                                        **Defendants.**

-------------------------------------------------------------------X

**12 Civ.**

**COMPLAINT**

The plaintiff, Everlast World's Boxing Headquarters Corporation, by its attorneys, Schlacter & Associates, as and for its Complaint against defendants Ringside, Inc., Combat Brands, LLC and RAL, LLC, alleges as follows:

### JURISDICTION AND VENUE

1.    This action, as more fully stated below, is for trademark infringement in violation of the Lanham Act, 15 U.S.C. Section 1051 *et. seq.*;  for unjust enrichment in violation of the laws of the United States and the State of New York; and for breach of contracts.

2.     This Court has jurisdiction of this action pursuant to the Lanham Act, 15 U.S.C. Sections 1121 and 1125(a); 28 U.S.C. Sections 1331, 1332(a)(1) [the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and is between citizens of different States]; and 28 U.S.C. Section 1338.

3.     The defendant Ringside, by its authorized representatives, came to New York City to negotiate and finalize the various agreements involved herein. Said agreements contain a provision indicating that the law of New York governs the agreements. In addition, the defendant Ringside has transacted business in New York State and in this District, including but not limited to purchasing significant amounts of products from plaintiff in New York City, and, upon information and belief, selling significant products to New York residents. Further, defendant Ringside has operated a website or websites that advertise, offer for sale, and sell various products, including the Licensed Products involved herein, to customers, including customers in the State of New York and in this District. This Court may therefore exercise personal jurisdiction over Ringside, pursuant to N.Y. Civ. Prac. L. & R. Sections 301 and 302, based upon its contacts with this forum, including at least regularly and intentionally doing business here and committing acts giving rise to this lawsuit. This Court may also exercise jurisdiction over the other defendants, who are alter-egos and/or successors to Ringside, and/or are one and the same as Ringside by virtue of their *de facto* merger with Ringside, as more particularly described below.

4.      Venue is therefore proper in this district under 28 U.S.C. Section 1391(b).
Process properly issues from this Court pursuant to Rule 4 of the Federal Rules of Civil
Procedure.

## THE PARTIES

5.      The plaintiff, Everlast World's Boxing Headquarters Corporation
(hereinafter referred to as "Everlast"), is a New York corporation, with offices located at
183 Madison Avenue, New York, NY 10017.

6.      The defendant, Ringside, Inc. (hereinafter referred to as "Ringside"), is a
Kansas corporation, with offices located at 14865 W. 105th Street, Lenexa, Kansas 66215.
Upon information and belief, the owner of Ringside is John Brown.

7.      The defendant Combat Brands, LLC (hereinafter referred to as "Combat"),
is a Kansas limited liability company, formed on June 19, 2012, and upon information
and belief, operates from the premises located at 14865 W. 105th Street, Lenexa, Kansas
66215.

8.      The defendant RAL, LLC (hereinafter referred to as "RAL"), is a Kansas
limited liability company, formed on June 21, 2012, and upon information and belief,
operates from the premises located at 14865 W. 105th Street, Lenexa, Kansas 66215.

Upon information and belief, the owner of RAL is John Brown, who is the same owner of Ringside.

## THE LICENSE AGREEMENTS

**A.**     **Trademark License in Respect of Boxing Products for USA and Canada**

9.     On or about February 4, 2009 Everlast and Ringside entered into a License Agreement for Boxing Products (hereinafter referred to as the "Boxing Products License Agreement"), whereby defendant licensed from Everlast the right to use certain specified trademarks (the "Trademarks") on specified Licensed Products (the "Licensed Products"), in a specified Contract Territory (the "Contract Territory"). The Boxing Products License was amended on two occasions by a First Supplemental Deed dated September 9, 2009, and by a Second Supplemental Deed dated February 11, 2010 (hereinafter collectively referred to as the "Boxing Products License Agreement").

10.     The initial term of the Boxing Products License Agreement was from January 1, 2009 through December 31, 2018.

11.     The License Agreement provides, in pertinent part and among other things, for Annual Guaranteed Minimum Royalties of the following sums, for the years 2012 through 2018:

| | |
|---|---|
| 2012 | $175,000.00 |
| 2013 | 192,500.00 |
| 2014 | 211,750.00 |
| 2015 | 232,925.00 |
| 2016 | 256,217.50 |
| 2017 | 281,839.25 |
| 2018 | 310,023.18 |

12.     The Boxing Products License Agreement also provides, in pertinent part, for Ringside to make its royalty payments to Everlast at the end of each quarter in each year of the License.

13.     The Boxing Products License Agreement further provides, in pertinent part, that upon termination of the Boxing Products License Agreement for any reason, all sums that would be due to Everlast during the term of said Agreement would become payable immediately upon such termination.

**B.     Trademark License in Respect of the Operation
of the Everlast Catalogue and Website for USA and Canada**

14.     On or about February 11, 2010 Everlast and Ringside entered into a License Agreement regarding the operation of the Everlast Catalogue and Website, for

the USA and Canada (hereinafter referred to as the "Website License Agreement"), whereby defendant licensed from Everlast the right to use certain specified trademarks (the "Trademarks") in relation to sales by defendant of specified Products through the Everlast Catalogue and Website, in a specified Contract Territory (the "Contract Territory"). The Website License Agreement was amended on June 3, 2011 by a First Supplemental Deed (which, collectively with the Website License of February 11, 2010 is referred to as the "Website License Agreement").

15.     The initial term of the Website License Agreement began retroactive from August 29, 2009, and was to extend through April 30, 2019.

16.     The Website License Agreement provides, in pertinent part and among other things, for Annual Minimum Guaranteed Purchase Targets, by which the defendant was required to purchase a minimum dollar amount of Products directly from Everlast as well as from other authorized licensees of Everlast. The minimum guaranteed purchases from Everlast, for the years May 1, 2012 through April 30, 2019, are as follows:

| | |
|---|---|
| 5/1/12 – 4/30/13 | $3,025,000 |
| 5/1/13 – 4/30/14 | 3,327,500 |
| 5/1//14 – 4/30/15 | 3,493,875 |
| 5/1/15 – 4/30/16 | 3,668,568.75 |
| 5/1/16 – 4/30/17 | 3,851,997.19 |

| | |
|---|---|
| 5/1/17 – 4/30/18 | 4,044,597.05 |
| 5/1/18 – 4/30/19 | 4,246,826.90 |
| | |
| Total: | $28,408,364.89 |

17.     The Website License Agreement also contains a provision requiring Annual Minimum Guaranteed Royalties to be paid to Everlast.

18.     The Website License Agreement further provides, in pertinent part, that upon termination of the Website License Agreement for any reason, all sums that would be due to Everlast during the term of said Agreement would become payable immediately upon such termination.

19.     The Website License Agreement further provides that if defendant breached a material term of any other agreement between Everlast and defendant, resulting in the termination of such other agreement, then Everlast had the right to terminate the Website License Agreement by simple, written notice of termination.

## ALTER-EGO, SUCCESSOR, DE FACTO MERGER

20.     On or about May 31, 2012, in accordance with the Boxing Products License Agreement, Everlast provided written Notice and Demand to Ringside that it had

failed to pay monies to Everlast that had become due; that said monies were then overdue; and that Everlast would terminate the Boxing Products License Agreement if payment was not made within ten days of service of said Demand.

21.     The defendant Ringside received and accepted said Notice and Demand.

22.     The defendant Ringside failed to make the required payments to Everlast, thereby materially breaching the Boxing Products License Agreement.

23.     Upon information and belief, during all relevant times involved herein, John Brown was the sole owner of defendant Ringside.

24.     On or about May 31, 2012, by virtue of the Notice of that date provided by Everlast, Ringside and John Brown knew that the various agreements with Everlast would be terminated by virtue of Ringside's breach of the respective agreements.

25.     As a consequence of Ringside's uncured breach of the Boxing Products License Agreement, Everlast provided to Ringside Notice of Termination of said License Agreement, dated and effective as of June 14, 2012.

26.     Additionally, as a further result of Everlast's termination of the Boxing Products License Agreement, Everlast provided Notice to Ringside, dated June 14, 2012 of the termination, effectively immediately, of the Website License Agreement.

27.     The defendant Ringside received and accepted the Notices terminating the Boxing Products License Agreement and the Website License Agreement.

28.     On or about June 14, 2012, by virtue of the Notices of that date provided by Everlast, Ringside and John Brown knew that the various agreements with Everlast were in fact terminated, effective that date.

29.     As a result of the termination of the agreements with Everlast, Ringside and John Brown knew that they would not be allowed to continue to sell Products with the Everlast trademarks, or to use the Websites and other Intellectual Property of Everlast, and they further knew that substantial monies would be immediately due and payable to Everlast.

30.     On June 19, 2012 Everlast notified Ringside, through its President, Orin Borgelt, that no Licensed Products should be sold by Ringside until further advice was given to Ringside by Everlast regarding the disposition of such Products.

31.     On June 21, 2012 John Brown formed and organized a new company called RAL, LLC ("RAL"), a limited liability company organized under the laws of Kansas.

32.     On June 19, 2012 a firm called Combat Brands, LLC ("Combat Brands") was formed under the laws of the State of Kansas.  Upon information and belief, an employee and in fact an officer of Combat Brands, LLC is Orin Borgelt, who was, at least until June 19, 2012, the President of Ringside.

33.     At the time of the formation of Combat Brands, LLC, Orin Borgelt (and therefore Combat Brands, LLC) knew that the agreements between Everlast and Ringside had been terminated; they knew that Ringside had no right to continue to sell any of the Licensed Products or use the Everlast Intellectual Property; and they knew that Ringside owed millions of dollars to Everlast.

34.     Ringside has used the name "Combat Sports" in its business.

35.     Upon information and belief, Combat Brands is acting as a selling agent for RAL.  In fact, according to information provided by Orin Borgelt, RAL obtained inventory of Ringside, including the Licensed Products, and Combat Brands is in the process of selling such Licensed Products, all in violation of the agreements between Everlast and Ringside, and also in violation of Everlast's trademarks.

36.     Orin Borgelt was, at least until June 19, 2012, the President of defendant Ringside.

37.     Although Orin Borgelt is allegedly no longer an employee or President of Ringside, Mr. Borgelt continues to communicate by email, and did in fact communicate to the plaintiff on July 3, 2012, using his Ringside email address – to wit, OBorgelt@RINGSIDE.com.

38.     Upon information and belief, RAL has purportedly obtained assets of Ringside, including Licensed Products of Everlast, without fair consideration, and for the purpose of divesting Ringside of all of its assets; to thereby cause Ringside to escape its obligations to its creditors; and thereby defrauding Ringside's creditors, including Everlast, and intending to preclude and prevent Everlast from collecting the monies and property to which it is entitled.

39.     Additionally, upon information and belief, Combat Brands and RAL are operating from the same premises as Ringside; either or both of them have allegedly hired at least 80% of the staff and management of Ringside; they are continuing to operate the website(s) of Ringside; and they are doing business as "Ringside" and as "Combat Sports", which were the names utilized by Ringside to do its business.  There is therefore a continuity of ownership between Ringside and Combat Brands and RAL, and

a continuity of management, personnel, physical location and general business operations between and among Ringside, Combat and RAL.

40.     Upon further information and belief, Ringside is in the process of liquidation, with a Receiver having been appointed to take control of the business of Ringside on June 5, 2012, in a litigation commenced by Premier Bank against Ringside and others, including John Brown, in the Johnson County Kansas District Court (Case No. 12 CV 04034).  However, the parties in that litigation apparently signed a consent order on or about June 26, 2012 dismissing the Receiver, in order for Ringside to be able to divest itself of its assets without the constraint of a court-ordered Receiver, and without proper oversight of the court.  Upon information and belief, Ringside is in fact divesting itself of all assets, including the Licensed Products, in violation of the License Agreements and Everlast's Trademarks.

41.     By virtue of the continuation of Ringside's business by Combat Brands and RAL at the same premises as Ringside; and by virtue of the continuation of at least 80% of the former employees and management of Ringside now being employed by Combat Brands and/or RAL; and by virtue of RAL being owned by the same owner as owned Ringside; and by virtue of Combat Brands and RAL operating the same exact business as Ringside; Combat Brands and RAL are alter-egos, and/or successors of Ringside, and/or a de facto merger has occurred between and among Ringside and Combat Brands and RAL.

42.     As a consequence thereof, Combat Brands and RAL are jointly and severally liable to plaintiff for all claims, losses and damages it has sustained by virtue of the wrongful actions of Ringside, including but not limited to damages for breach of contracts and for trademark infringement.

### FIRST CAUSE OF ACTION:  BREACH OF CONTRACT
### (AS AGAINST RINGSIDE, INC.)

43.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 42 above as if fully repeated herein.

44.     Defendant Ringside has failed to make the Minimum Guaranteed Royalty payment that was due pursuant to the Boxing Products License Agreement, for the first quarter of 2012, and has failed to make any subsequent payments required by said License Agreement, and has failed to cure its breach notwithstanding its receipt of proper Notice and Demand.

45.     As a consequence of Ringside's uncured breach of the Boxing Products License Agreement, in addition to the termination of the Boxing Products License Agreement, Everlast also provided Notice to Ringside, dated June 14, 2012 of the termination, effectively immediately, of the Website License Agreement.

46.     The defendant Ringside received and accepted the Notices terminating the Boxing Products License Agreement and the Website License Agreement.

47.     Everlast has fulfilled all of its obligations under the Agreements with Ringside.

48.     Therefore, all agreements between Everlast and defendant Ringside have been terminated as a consequence of Ringside's breach of the Boxing Products License Agreement, in accordance with the terms of the respective Agreements.

49.     As a consequence of Ringside's breach of the Boxing Products License Agreement, all monies due under all agreements between Everlast and Ringside are now due immediately.

50.     Defendant Ringside therefore owes to Everlast, pursuant to the terms of the Boxing Products License Agreement, a total sum to be determined at trial, but the minimum guaranteed sum of $1,660,254.93.

51.     In addition, Ringside owes to Everlast a total sum to be determined at trial based on the termination of the Website License Agreement, but believed to exceed $28 million dollars (less anticipated cost of production of the merchandise covered thereby).

52.     As a consequence of the defendant Ringside's wrongdoing, Everlast has therefore sustained damages in a sum to be determined at trial, but believed to exceed $29.6 million dollars, less anticipated cost of production.

### SECOND CAUSE OF ACTION:  BREACH OF CONTRACT BASED ON ALTER-EGO, SUCCESSOR AND/OR DE FACTO MERGER (AS AGAINST COMBAT BRANDS, LLC AND RAL, LLC)

53.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 52 above as if fully repeated herein.

54.     Combat Brands, LLC and RAL, LLC are liable to plaintiff for the obligations and monies owed to plaintiff by Ringside, by virtue of their being the alter-egos and/or successors to Ringside, and/or by virtue of their having been a de facto merger between Ringside and Combat Brands and RAL.

55.     As a consequence thereof, defendants Combat Brands and RAL owe to Everlast, pursuant to the terms of the Boxing Products License Agreement, a total sum to be determined at trial, but the minimum guaranteed sum of $1,660,254.93.

56.     As a further consequence thereof,  defendants Combat Brands and RAL owe to Everlast a total sum to be determined at trial based on the termination of the

Website License Agreement, but believed to exceed $28 million dollars (less anticipated cost of production of the merchandise covered thereby).

57.     Therefore, as a result of the wrongdoing of defendants Combat Brands and RAL, Everlast has sustained damages in a sum to be determined at trial, but believed to exceed $29.6 million dollars, less anticipated cost of production.

### THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS: TRADEMARK INFRINGEMENT (LANHAM ACT SECTION 32 [15 U.S.C. SECTION 1114(1)])

58.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 57 above as if fully repeated herein.

59.     Everlast has been in the business of manufacturing, having manufactured, marketing, advertising, offering for sale, selling, and licensing third parties to sell boxing equipment and accessories in the United States and worldwide (hereinafter collectively referred to as the "Goods").

60.     In connection with the Goods, Everlast uses and owns the Trademark EVERLAST (the "Trademark").

61.     Everlast is the owner of various United States Trademark Registrations for its Trademark in connection with the Goods in, among other classes, International Class

25 and 28, including without limitation U.S. Registration Nos. 524970, 855036, 803366, 1291250, 1346377, 1429227, 1898922, 1864807, and 2158328.

62.    Everlast has used its registered Trademark continuously in commerce since at least 1912, and is currently making such use.

63.    Everlast's use of its Trademark has been open, notorious and continuous since at least a time prior to any of the acts of the defendants complained of herein.

64.    The Trademark, as applied to the Goods, is an inherently distinctive and strong Trademark.

65.    Because of Everlast's long, exclusive and extensive use and promotion of the Trademark, the Trademark has become distinctive and famous, and indicates a single source of origin of Everlast's goods.

66.    Pursuant to the Boxing Products and Website License Agreements between Everlast and Ringside, upon the termination of said License Agreements, at Everlast's option, Ringside had no right to continue to sell any of the Licensed Products or use any of the Intellectual Property of Everlast.

67.   Pursuant to the termination of the aforesaid License Agreements, Ringside was notified by Everlast to, among other things, cease all further sales or distribution of any Licensed Products.

68.   Ringside, however, has failed to abide by its obligations and Everlast's directions, and has continued to sell, promote and advertise the Licensed Products.

69.   In addition, although they knew of the termination of the License Agreements between Ringside and Everlast, defendants Combat Brands and RAL have impermissibly obtained Licensed Products from Ringside, and are currently selling, advertising and promoting such Licensed Products, without Everlast's consent.

70.   By reason of the foregoing, defendants Ringside, Combat Brands and RAL have infringed and continue to infringe Everlast's Trademark.

71.   Defendants' aforesaid conduct and infringement of Everlast's rights in the Trademark is willful, in that defendants knew of Everlast's Trademark; they knew of the existence of and termination of the License Agreements between Ringside and Everlast; and nonetheless, they have continued to use Everlast's Trademark without plaintiff's consent. This use of Everlast's Trademark without permission or authority of Everlast has been and continues to be in a manner likely to cause confusion, to cause mistake, and to deceive.

72.     The aforesaid and continuing acts of defendants infringe Everlast's registered Trademark in violation of 15 U.S.C. Section 1114(1).

73.     In addition, the defendants' aforesaid actions constitute willful infringement, in violation of Everlast's rights under Section 32 of the Lanham Act, 15 U.S.C. Section 1114.

74.     Plaintiff is being irreparably harmed and injured by defendants' aforesaid acts, and has no adequate remedy at law for defendants' continued infringement, which irreparable injury will continue unless defendants are restrained and enjoined from continuing such acts.

**FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS:**
**FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTION and UNFAIR**
**COMPETITION**
**(LANHAM ACT SECTION 43(a) [15 U.S.C. SECTION 1125(a)])**

75.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 74 above as if fully repeated herein.

76.     Despite the termination of the License Agreements between Everlast and Ringside, the defendants are continuing to sell, advertise and promote the Licensed Products containing the Everlast Trademark without Everlast's permission, consent or

authorization, and defendants are representing and making it appear that they are authorized to sell the Licensed Products.

77.     Defendants aforesaid conduct constitutes a false designation of origin, and/or a false and misleading description or representation of goods in commerce, with knowledge of its falsity, which is likely to cause confusion, mistake and deception, and misrepresents the origin of defendants' goods, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a).   Among other things, the defendants' unauthorized sale of the previously Licensed Products and use of the plaintiff's Trademark, tend to mislead, deceive and confuse, and will have the result of misleading, deceiving and confusing the public to believe that defendants and/or their infringing goods are affiliated with, sponsored or controlled by Everlast.   As a consequence, defendants have and are trading upon, and gained public acceptance and other benefits from Everlast's favorable reputation, which has accordingly been placed at risk by defendants' illegal acts and conduct.

78.     Plaintiff has been irreparably damaged and, unless defendants are restrained and enjoined, will continue to be irreparably damaged by the defendants' aforesaid actions.

79.     Plaintiff has no adequate remedy at law for defendants' continuing wrongful actions.

80.    Defendants have at all times been aware of plaintiff's Trademark; of the termination of the License Agreements; of the defendants' lack of authority to use plaintiff's Trademark and to sell any of the Licensed Products.    Accordingly, the infringing and tortious acts of the defendants are intentional, willful and deliberate.

## FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS: FEDERAL TRADEMARK DILUTION (LANHAM ACT SECTION 43(c) [15 U.S.C. SECTION 1125(c)])

81.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 80 above as if fully repeated herein.

82.    The foregoing acts of the defendants constitute tarnishment and dilution of the Everlast Trademark, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. Section 1125(c).

83.    Plaintiff has no adequate remedy at law, and the wrongful acts of the defendants are intentional, willful and deliberate.

## SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS:
## UNJUST ENRICHMENT

84.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 83 above as if fully repeated herein.

85.     As a result of the unauthorized and improper sales of Licensed Products by the defendants, they have been unjustly enriched.

86.     As a consequence of the above, the plaintiff is entitled to recover damages in a sum to be proven at trial.

## SEVENTH CAUSE OF ACTION:  PERMANENT INJUNCTION

87.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 86 above as if fully repeated herein.

88.     As a consequence of the termination of the License Agreements, the defendants have no right to use, directly or indirectly, in any manner whatsoever, any of the Trademarks, Websites and/or any other Intellectual Property of Everlast, covered by the License Agreements.

89.     Upon information and belief, the defendants have continued to use the Trademarks, Websites and/or other Intellectual Property of Everlast, in violation of the terms of the License Agreements and in violation of plaintiff's Trademark.

90.     The plaintiff has no adequate remedy at law.

91.     As a consequence thereof, the plaintiff seeks a permanent injunction, enjoining the defendants and their affiliates, subsidiaries, assigns and their respective agents, owners, members, officers, directors, employees, attorneys and any and all persons or firms in active concert with defendants, from any and all further use, directly or indirectly, in any manner whatsoever, of any of the Trademarks, Websites and/or any other Intellectual Property of Everlast, covered by the License Agreements.

**WHEREFORE**, the plaintiff respectfully demands judgment against defendants jointly and severally, as follows:

a.     On the first cause of action, a sum to be determined at trial, but believed to be in excess of $29.6 million dollars (less anticipated cost of production);

b.     On the second cause of action, a sum to be determined at trial, but believed to be in excess of $29.6 million dollars (less anticipated cost of production);

c.      On the third cause of action, injunctive relief as well as the defendants' profits, actual damages, enhanced profits and damages, costs and attorneys' fees under 15 U.S.C. Sections 1114, 1116 and 1117;

d.      On the fourth cause of action, injunctive relief as well as the defendants' profits, actual damages, enhanced profits and damages, costs and attorneys' fees under 15 U.S.C. Sections 1125(a), 1116 and 1117;

e.      On the fifth cause of action, injunctive relief as well as the defendants' profits, actual damages, enhanced profits and damages, costs and attorneys' fees under 15 U.S.C. Sections 1125(c), 1116 and 1117;

f.      On the sixth cause of action, a sum to be determined at trial;

g.      On the seventh cause of action, a permanent injunction prohibiting the defendants and their affiliates, subsidiaries, assigns and their respective agents, owners, members, officers, directors, employees, attorneys and any and all persons or firms in active concert with them, from any and all further use, directly or indirectly, in any manner whatsoever, of any of the Trademarks, Websites and/or any other Intellectual Property of Everlast covered by the License Agreements; and

h.     Awarding to plaintiff interest, attorneys' fees, costs, disbursements and

such other and further relief as this Court deems just and proper.


Dated: New York, New York
      July 5, 2012

                                    SCHLACTER & ASSOCIATES
                                    Attorneys for Plaintiff

                                  By
                                    Jed R. Schlacter, Esq. (JRS 4874)

                                  450 Seventh Avenue
                                  New York, NY 10123
                                  212 695-2000