## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

EVERLAST WORLD'S BOXING     )
HEADQUARTERS CORPORATION,     )
    )
               Plaintiff,     )
    )
    )     Case No.: 13-2150-CM-KGG
RINGSIDE, INC., *et al.*,     )
    )
               Defendants.     )
_____ )

## MEMORANDUM & ORDER ON
## PLAINTIFF'S SECOND MOTION TO COMPEL

Before the Court is Plaintiff's "Second Motion to Compel Production of

Documents."  (Doc. 119.)  For the reasons set forth below, Plaintiff's motion is

**GRANTED in part** and **DENIED in part** as more fully set forth herein.

## BACKGROUND

The background of this case was summarized in this Court's Order of June

23, 2014 (Doc. 71), granting in part and denying in part Defendant's "Motion to

Enforce Discovery and for Sanctions."  That summary stated in part

> [t]he present action was filed on July 9, 2012, in
> the United States District Court for the Southern District
> of New York.  Claims were asserted against the various
> Defendants for breach of contract, trademark
> infringement, false designation of origin and unfair
> competition, trademark dilution, and unjust enrichment.
> (Doc. 1.)  In August 2012, Defendants moved to dismiss

> the Complaint or, in the alternative, transfer it to the
> District of Kansas.  (Doc. 6.)
> Defendant Ringside filed Suggestions of
> Bankruptcy in November 2012, in the United States
> Bankruptcy Court for the District of Kansas.  (Doc. 17.)
> This triggered an automatic bankruptcy stay.  The present
> action was transferred to the District of Kansas on March
> 13, 2013.  (Doc. 22.)
> Judge Berger of the United States Bankruptcy
> Court for the District of Kansas denied the Motion to
> Enforce Automatic Stay regarding Plaintiff's claims
> against Defendants RAL and Combat, by Order dated
> September 27, 2013.  This permitted those counts to go
> forward in this Court.  (*See* Doc. 37, at 7.)  Plaintiff filed
> a Motion to Amend the Complaint (Doc. 36) on
> December 2, 2013, which was granted on December 23,
> 2013 (Doc. 41).

(Doc. 71, at 1-2.)

Following the filing of the present motion to compel, Defendants "produced a limited number of files, supplemental responses to the Second Requests, and a privilege log," which "necessarily changed" Plaintiff's requested relief.  In its reply memorandum, Plaintiff withdrew sections B - E of its original motion, removing its arguments as to Defendants' allegedly conditional responses, boilerplate objections, trade secret objections, and relevance objections.  (Doc. 125, at 2.)  The Court will, therefore, focus on the remaining arguments contained in Plaintiff's reply brief.

## DISCUSSION

**A.      Volume (or Lack Thereof) of the Document Production.**

Plaintiff initially argues that Defendants produced only 641 "distinct files" out of a "universe of 'potentially responsive' documents numbered more than 23,000 files . . ." (Doc. 125, at 3.) Plaintiff argues that it "has no means of knowing what was contained in 96% of the documents expected during discovery." (*Id.*) As such, Plaintiff requests that the Court compel Defendants "to produce the balance of the '23,516 distinct files' of 'potentially responsive' documents, only excluding documents withheld on a claim of attorney client privilege and/or work product protection that are timely disclosed in a compliant privilege log." (*Id.*, at 3-4.)

The Court sympathizes with Plaintiff's desire to engage in a *carte blanche* review of Defendants' documents. This is not, however, how discovery works. The procedure requested by Plaintiff is the epitome of the type of fishing expedition routinely prohibited by Courts throughout the United States. Although Defendants have referred to an admittedly voluminous number of "potentially responsive" documents, the mere fact that documents exist and, before review, were potentially responsive does not mean that they are, upon review by defense counsel, in fact responsive to any of Plaintiff's discovery requests. The mere ratio

3

of existing documents to produced documents does not provide the Court with a logical basis to grant Plaintiff's motion.  The Court will, however, discuss specific types and categories of documents addressed in the briefing of the parties.

**B.      E-mail Attachments.**

Plaintiff contends that Defendants have produced certain e-mail but have failed to produce "138 native files" that consisted of the attachments to such e-mail.  (Doc. 125, at 4.)  Defendants claim this "was an inadvertent result of how defense counsel's document production software treats such attachments as separate files."  (Doc. 124, at 12.)  Defendants agreed to produce such documents "or amend the privilege log where necessary."  (*Id*.)  Plaintiff argues that "[t]o the extent Defendants plan to belatedly assert that some or all of the omitted documents were subject to attorney-client privilege or production, such assertion is untimely."  (Doc. 125, at 4.)

The Court is satisfied with Defendants' explanation of this oversight and finds that any relevant privileges have not been waived.  That stated, Defendants are instructed to provide Plaintiff's counsel with any such non-privileged documents and amend the privilege log, if necessary, within the time frame stated at the end of this Order.

**C.      Documents Identified as Responsive.**

4

Plaintiff sought "[a]ny and all e-mails, letters, correspondence" between the various Defendants "(including its agents and attorneys) and Vince O'Flaherty," the special counsel to the trustee in Ringside's bankruptcy.  (Doc. 125, at 4.) Combat Brands did not object, but rather responded, in both its initial and supplemental discovery responses, that such documents were "[p]roduced herewith in native (MS Outlook) format."  (Doc. 119-1, at 2; Doc. 124-2, at 7.)  Plaintiff argues that Defendants did not produce all responsive documents and omitted "the documents provided to Mr. O'Flaherty by Mark Shaiken, who, along with Defendants' counsel, is counsel for Combat Brands in the Ringside Bankruptcy." (Doc. 125, at 5.)

Plaintiff is correct that "an objection not raised in the initial discovery response is deemed waived if subsequently raised for the first time in response to a motion to compel."  *McFadden v. Corrections Corp. of America*, 09-2273-EMF-KGG, 2012 WL 555069, *5 (D. Kan. Feb. 21, 2012) (citing *Seed Research Equip. Solutions, LLC v. Gary W. Clem, Inc.*, No. 09–1282–EFM-KGG, 2011 WL 1743232, at *1 (D.Kan. May 6, 2011) (internal citations omitted)).  The Court notes that the undersigned Magistrate Judge previously ordered Plaintiff to provide similar communications with Mr. O'Flaherty because Plaintiff similarly raised a particular objection for the first time in response to a motion to compel rather than

5

in response to the underlying discovery response.  (Doc. 71, at 17.)

Defendants are ordered to produce the responsive documents at issue, "including the 10,000 documents and 'post-6-23-12' documents specifically cited in Combat Brands's communications with Mr. O'Flaherty."  (Doc. 125, at 7.) Defendants are also compelled to respond as to whether or not any communications exist between Mr. Carter and Mr. O'Flaherty that are responsive to this request.  If such documents do in fact exist, Defendants are compelled to produce the same.

**D.     Corrupted Files.**

Plaintiff next argues that certain files produced by Defendants were corrupted and, therefore unuseable.  (Doc. 125, at 7.)  Defendants contend that they "should not be made to be guarantors that all electronic files are non-corrupt, virus free, etc."  (Doc. 124, at 12.)  Defendants continue that the documents were produced in the manner in which they exist and, while they will attempt to open the files at issue, "should not be compelled to essentially 'fix' the files."  (*Id.*)

Defendants' argument borders on the absurd.  Defendants do not meet their obligations to respond to discovery if the information they are producing is corrupt, virus-laden, and/or otherwise unuseable.  The Court does not agree that files in their corrupted state constitute "the manner in which they exist."  Defendants

6

should be, and hereby are, compelled to essentially "fix" the files, if such "fixing" is necessary to make them useable by the requesting party.

**E.     Reference to Bates Numbered Documents.**

According to Plaintiff, Defendants' document production included the production of a significant number of documents that are not referenced in response to any of the specific discovery requests.  Plaintiff asks that Defendants "supplement their responses so that each Bates number [is] identified with one or more requests."  (Doc. 125, at 8; *see also* Doc. 120, at 13.)

Further, Plaintiff requests that Defendants "supplement their discovery responses to identify all Bates numbered documents to the requests to which they are responsive including the Bates numbered documents set forth in [Plaintiff's] October 22 letter."  Federal Rule of Civil Procedure 34 directly addresses this issue.  Unless the documents are produced "as they are kept in the usual course of business," they must be organized or labeled "to correspond to the categories in the request."  There is no indication that the documents were produced as they are kept in the usual course of business which, in this case, would have meant providing Plaintiff direct access to the storage location of the files without prior culling based on responsiveness or privilege.  Thus, the produced files must, some how, be identified to the request to which they are responsive.  The Court instructs

7

Defendants to indicate the requests to which each of the produced documents are responsive – as well as to verify that all produced documents have corresponding discovery requests – **within thirty (30) days of the date of this Order**.

**F.     Privilege Log Deficiencies.**

Plaintiff contends that Defendants' privilege log is deficient in various respects.  Each alleged deficiency will be discussed in turn.

**1.     The omnibus nature of the privilege log.**

The privilege log at issue encompasses claims of privilege by all Defendants and fails to identify which Defendant asserts the particular privilege as to the enumerated documents.  The Court orders Defendants to provide a privilege log as to each Defendant individually and/or revise the current privilege log to include an indication as to which Defendant(s) raise the particular privilege(s) as to each enumerated document contained on the log.

**2.     Attorney-client privilege versus work product doctrine.**

Plaintiff complains that the privilege log "fails to identify whether [Defendants] are asserting work-product privilege or attorney work product for each document."  (Doc. 125, at 10; *see also* Doc. 125-5.)  The work product doctrine is contained in Fed.R.Civ.P. 26(b)(3)(A) and

'protects from discovery all documents and materials

prepared by an attorney, a party, or an agent of either, in anticipation of litigation. To establish work product protection, the party seeking to invoke work product immunity must show that (1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party. The party invoking work product immunity for a document has the burden to establish all the elements of the immunity, and a mere allegation that the work product privilege applies is insufficient to prove applicability.'

*AKH Co., Inc. v. Universal Underwriters Ins. Co.*, 300 F.R.D. 684, 686 (D. Kan. 2014) (quoting *McNabb v. City of Overland Park*, No. 12–2331–CM–TJJ, 2014 WL 1152958, at *8 (D.Kan. March 21, 2014) (citations omitted)).

Plaintiff has not explained the distinction it is drawing between work-product privilege versus *attorney* work product. The Court surmises Plaintiff is delineating documents created *by* a party versus documents created *for* the party by counsel. Plaintiff has not cited any case law requiring a party to indicate in its privilege log, or anywhere else, whether the documents created in anticipation of litigation or trial were prepared by the party or for the party. The Court will not order such a distinction to be made herein.

### 3.    E-mail string contained in privilege log.

Plaintiff next argues that, for example, privilege log entries 14, 22, and 24 "do not include counsel, and therefore, do not appear to seek legal advice, thus

improperly invoking privilege." (Doc. 125, at 10.)  Defendants responded that these communications are privileged because they were forwards of a privileged communication from counsel.  Plaintiff argues that "[i]n failing to identify each email in an email string, Defendants have waived any privilege associated with entries 14, 22, and 24." (*Id.*, citing ***Tri-State Truck Ins., Ltd. v. First Nat. Bank of Wamego***, No. 09-4158-SAC, 2011 WL 117222, *1 (D. Kan. Jan. 13, 2011).) Rather than finding waiver, the Court directs Defendants to enumerate each individual e-mail encompassing the email string.  To the extent that the factors necessary to establish privilege cannot be met as to certain e-mail encompassed in a particular string, such e-mail must be produced.

### 4. Waiver of the objection.

Plaintiff contends that because Defendants did not raise the attorney client privilege or work product doctrine in response to Plaintiff's Second Requests for Production to Defendant Combat Nos. 1 and 16, the objections have been waived and Defendants cannot subsequently raise the privilege.  (Doc. 125, at 10-11; *see also* Doc. 120, at 6; Doc. 119-1, at 1, 5; Doc. 124-2, at 1, 12-14; Doc. 125-5.)  As discussed above, "an objection not raised in the initial discovery response is deemed waived if subsequently raised for the first time in response to a motion to compel." *See McFadden*, 2012 WL 555069, *5.

10

Plaintiff is correct that Defendants did not include an objection based on the attorney-client privilege or work product doctrine in the supplemental responses to Nos. 1 and 16 of Plaintiff's Second Requests for Production to Defendant Combat. (Doc. 124-2, at 1, 12.)  Defendants did, however, include one document responsive to Request No. 16 (identified as Doc. # 594) in their privilege log.  (Doc. 125-5, at 1.)  Defendants have, however, waived attorney client privilege and/or work product privilege as to as to all other such documents responsive to Requests Nos. 1 and 16.  Any such documents (other than Doc. #594) withheld on the basis of privilege are to be produced.

Conversely, Plaintiff contends that Defendants have waived the privilege raised in response to Requests Nos. 12 and 13, but for which there are no documents contained in the privilege log.  The Court instructs Defendant to supplement its privilege log accordingly to include any such information responsive to Requests Nos. 12 and 13 that was withheld on the basis of privilege or, in the alternative, supplement the response to Requests Nos. 12 and 13 to remove any reference to privilege.

**5.     Information regarding the formation of the company.**

Plaintiff argues that a party should not be able to invoke the attorney-client privilege in regard to communications occurring before the formation of a

11

particular corporate defendant.  (Doc. 125, at 11.)  Defendants contend that communications "between an individual and their attorney regarding a company that was being formed (and, more specifically, a transaction that the to-be-formed company would consummate immediately after being created)" should be encompassed by the attorney-client privilege.  (Doc. 124, at 5.)  Defendants continue that Plaintiff's position "would come as a shock to the entire legal community and businesses everywhere, and appears to be supported by no case law."  (*Id.*)

Plaintiff replies that "none of the [privilege log] entries challenged by [it] describe the communications involving company formation," thus making Defendants' explanation "misleading and insufficient."  (Doc. 125, at 11.)  Even assuming this to be true, Plaintiff has not addressed whether the communications at issue could, or do, relate to "a transaction that the to-be-formed company would consummate immediately after being created."  (Doc. 124, at 5.)  As such, the Court finds that Plaintiff has not established that the assertion of the privilege is improper on this basis.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc. 119) is **GRANTED in part** and **DENIED in part** as more fully set forth above.

Defendants are **ORDERED** to comply with the orders contained herein **within thirty (30) days of the date of this Order**.

      **IT IS SO ORDERED.**

Dated at Wichita, Kansas, on this 12th day of January, 2015.

                      S/ KENNETH G. GALE
                      KENNETH G. GALE
                      United States Magistrate Judge

13